UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:25-cr-70-WFJ-CPT

FRANK JUDE PETRONE, SR.

**THE UNITED STATES'S SENTENCING MEMORANDUM**

Defendant Frank Jude Petrone, Sr., then a Sarasota gun store employee, trafficked multiple semiautomatic firearms, ammunition, and large capacity magazines to someone he knew to be a convicted felon.  By his own admission, the defendant did so to make fast money, even though he had a household income greater than $100,000.  Fortunately, the defendant had sold the guns charged in this indictment to a confidential informant who had reported the defendant's firearms trafficking activities to law enforcement.  The defendant's greed risked public safety. Considering the seriousness of the defendant's crimes and the other statutory purposes of sentencing, the United States recommends that the Court sentence the defendant to a high-end, Guidelines sentence of 46 months in prison and three years of supervised release.

I.      **FACTUAL BACKGROUND**

According to the Presentence Investigation Report (the "Report"), in 2024, a confidential informant told a Manatee County Sheriff's Office deputy that the defendant had previously sold the informant guns and that the defendant was again

offering to sell the informant a gun.  Report ¶ 11.  Additionally, the confidential

informant said that the defendant worked at a gun store in Sarasota, Florida.  The

confidential informant had prior felony convictions for receiving stolen property and

theft.  Report ¶ 26.

On October 2, 2024, the deputy passed the confidential informant's tip on to

special agents with the Bureau of Alcohol Tobacco, Firearms, and Explosives.

Report ¶ 11.  ATF records showed that, in 2022, two firearms that the defendant had

bought turned up during investigations related to drugs and illegal gun possession.

Report ¶ 12, Ex. 1.[1]  Petrone purchased one of those guns less than five months

before ATF recovered it.  Ex. 1, at 2.  ATF records further revealed that the

defendant had bought at least thirteen handguns on at least six occasions in the

previous thirteen months, including eleven semi-automatic pistols and nine 9-

millimeter handguns.  Report ¶ 13.

After reviewing this information, ATF special agents arranged for the

confidential informant to buy guns and ammunition from the defendant on four

occasions.  Report ¶¶ 14, 16, 18, 21.  The confidential informant video and audio-

---

[1] The defendant objects to the inclusion of this paragraph in the Report, but he provides no basis to discredit the ATF firearms trace records.  Report at 21.  As the Probation Officer explained, however, the United States Code sets no limits on the information that the Court may receive at sentencing.  Report at 21 (citing 18 U.S.C. § 3661).  *See also* USSG §1B1.4 (providing that "[i]n determining the sentence to impose, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.").  Moreover, USSG §1B1.3(a)(1)(A) defines relevant conduct to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

recorded the sales, all of which took place at a Bradenton, Florida parking lot.  Doc. 29, at 3-4; Report ¶¶ 14, 16, 18, 21.

The *first* sale took place on October 17, 2024.  Report ¶ 14.  During that sale, the defendant got into the confidential informant's vehicle with a gun and ammunition.  Report ¶ 14.  The defendant told the confidential informant, ".357, okay, and then we got hollow fucking points, okay, wipe your fucking fingerprints off the fucking bullets."  Report ¶ 14.  The confidential informant responded, "With my past felony convictions I have . . . they're trying to fucking railroad me . . . I don't know what to do at this point."  Report ¶ 14.  The defendant replied, "Take this, wipe the bullets off, get in this fucking truck, and drive."  The defendant then sold a loaded Taurus 357-caliber revolver, along with five loose rounds, to the confidential informant for $340.  Report ¶ 14.  He later said, "What I'm saying is, where in the U.S. can you go and just fucking law low, work fucking cash and . . .I need the money.  This fucking $340 now is going to fucking really work great.  I'm gonna go straight to [the bank], put it in."  Report ¶ 14.  And, as the defendant exited the confidential informant's vehicle, he said, "Do me a favor though, I trust you 100%, wipe your fucking prints off that shit."  Report ¶ 14.

The *second* sale occurred on November 8, 2024.  Report ¶ 16.  This time, in exchange for $800, the defendant sold the confidential informant an unloaded Sig Sauer 9-millimeter pistol with three large capacity magazines, one that could hold 18 rounds and two that could hold 21 rounds of ammunition each, and fifty-seven rounds of Pilgrim brand 9-millimeter hollow point ammunition.  Report ¶ 17.  The

3

defendant also discussed having a machine gun with the confidential informant. Report ¶ 16.

The *third* sale happened on January 2, 2025, when the defendant gave the confidential informant an unloaded TISAS .45 caliber pistol and 50 rounds of CBC brand, .45-caliber ammunition for $800. Report ¶¶ 18, 19. At this meeting, the confidential informant told the defendant that he wanted to buy the machine gun that they had discussed and asked, "what's it going for me to take to file off the serial numbers?" Report ¶ 18. The defendant answered, "You can fucking file them off." Report ¶ 18. The confidential informant replied, "You file them off . . . you know I can't have serial numbers on that MF." Report ¶ 18. The defendant agreed to sell the confidential informant the machine gun for $4,000 and noted that he had loaded 50 and 40 round magazines available at his home. Report ¶ 18. In response, the confidential informant told the defendant that the confidential informant would have money in a few weeks and to make "sure there's no numbers inside, I'm going to sell it, I can't have numbers on that bitch. That way it covers your ass too." Report ¶ 18.

The *fourth* sale occurred on January 28, 2025, but ATF special agents obtained a federal arrest warrant for the defendant the day before. Report ¶¶ 20, 21. *See also* Docs. 1, 2. When the defendant and the confidential informant met, the defendant showed the confidential informant the purported machine gun, and they discussed the importance of the gun's supposed un-traceability. Report ¶ 21. For example, the defendant told the confidential informant not to worry because he bought the gun "from somebody" and it was "not tied to me." Report ¶ 21. And, the confidential

informant said, among othering things, that the confidential informant would face severe consequences if found with a machine gun: "I've got 13 felonies, fully automatic gun, life in prison, yeah, no." Report ¶ 21. The defendant acknowledged that the confidential informant would be "done" if caught with a machine gun. Report ¶ 21. Later, the defendant gave the confidential informant a CZ Scorpion 9-millimeter pistol (not a machine gun), loaded with 29 of a possible 50 rounds of ammunition, for $3,900. Report ¶ 22.

ATF special agents and local law enforcement officers arrested the defendant after he left the parking lot. Report ¶ 22. They also executed a search warrant at the defendant's home, where they found, among other things, more guns, ammunition, and accessories. Report ¶ 23. Investigators further found eight empty gun boxes (as of this writing, ATF special agents have not found seven of those guns), one gun receipt (as of this writing, ATF special agents have not found the gun listed on the receipt), and 12 partially completed ATF Form 4473s (which federal law generally requires to be completed at a gun store). Report ¶ 23. *See also* 27 C.F.R. § 478.124 (setting forth requirement to complete Form 4473 prior to sale or disposition of firearm).

The defendant confessed after receiving and waiving his *Miranda* rights. Report ¶¶ 24-25. He rationalized his conduct as an attempt to "make fast money," though he knew, as a gun store employee, that felons could not have firearms. Report ¶ 24. That said, the Report shows that, at the time of the offense, the defendant's household gross income exceeded $100,000. Report ¶ 76. Even after he

5

lost his job at the gun store because of this offense, the defendant has kept a positive net worth and cash flow. Report ¶ 77.

During his interview, the defendant also acknowledged that "I sold a felon a gun. I knew he was a felon, and I sold him a gun, end of story." He further wrote a letter of apology. Report ¶ 25. The defendant not only admitted that he sold the confidential informant guns, but the defendant also admitted that he bought cocaine from the confidential informant. Report ¶ 25.

## II.    PROCEDURAL HISTORY

The defendant appeared in this Court on January 29, 2025, and United States Magistrate Judge Amanda Arnold Sansone ordered him placed on home detention pending trial. Doc. 9. On February 13, 2025, a grand jury returned a five-count indictment that charged one count of firearms trafficking, in violation of 18 U.S.C. § 933, and four counts of sale of a firearm to a felon, in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(8). Doc. 12. On August 26, 2025, the defendant pleaded guilty to all counts of the indictment without a plea agreement before United States Magistrate Judge Christopher P. Tuite, who recommended accepting the plea and adjudging the defendant guilty. Doc. 29, 33, 35. On September 10, 2025, this Court accepted the defendant's guilty plea and adjudged him guilty. Doc. 38. The sentencing hearing is set for April 3, 2026 at 11:30 a.m. Doc. 49.

## III.   THE REPORT CORRECTLY APPLIED THE SPECIFIC OFFENSE GUIDELINE FOR FIREARMS TRAFFICKING

The Report correctly calculates the Guidelines range in this case as 37 to 46

6

months in custody, followed by three years of supervised release.  Report ¶¶ 80, 84. Petrone mistakenly objects to this range, on the ground that the Report double counted his conduct by applying the firearms trafficking specific offense adjustment, USSG §2K2.1(b)(6)(B)(i)(I), after also applying the base offense level for trafficking semiautomatic firearms capable of accepting a large capacity magazine, USSG §2K2.1(a)(4)(B)(i)(I).  Report at 22.  Both the enhanced base offense level and specific offense adjustment applies because the Sentencing Commission intended to enhance the punishment of firearms traffickers by applying them on top of each other.

Courts presume that the Sentencing Commission intended separate Guideline sections to apply cumulatively unless otherwise specified.  *United States v. Asante*, 782 F.3d 639, 647 (11th Cir. 2015) (quoting *United States v. Flanders,* 752 F.3d 1317, 1340 (11th Cir. 2014)).  "Double counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing."  *United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir. 2012).  As a result, "[i]mpermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  *United States v. Dudley*, 463 F.3d 1221, 1226-27 (11th Cir. 2006) (quoting *United States v. Matos-Rodriguez,* 188 F.3d 1300, 1309 (11th Cir. 1999)).  When interpreting the Guidelines, courts use "the traditional tools of construction, considering the text, structure, history, and

purpose." *See United States v. Kluge*, 147 F.4th 1291, 1297 (11th Cir. 2025).  Here, the (1) text, (2) structure, and (3) history all demonstrate that these two provisions apply cumulatively.

*First*, the text of the statute shows that these two provisions presumably apply cumulatively because they address different harms.  As relevant here, USSG §2K2.1(a)(4)(B)(i)(I) applies where (1) the "offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine" and (2) the defendant was convicted under 18 U.S.C. §§ 922(d) or 933.  *See* USSG §2K2.1(a)(4)(B)(i)(I) (punctuation omitted).  *See also* Report ¶ 32.  In contrast, USSG §2K2.1(b)(6)(B) applies where the defendant "transported, transferred, sold, or otherwise disposed of . . . a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who was a prohibited person (punctuation omitted)." *See also* Report ¶ 34.  In other words, USSG §2K2.1(b)(6)(B) applies to nearly any conviction for a violation of 18 U.S.C. § 933(a)(1), just as §2K2.1(a)(4)(B)(i)(I) does.  *See* 18 U.S.C. § 933(a)(1) (prohibiting any person to "ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person . . . , if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony").  But §2K2.1(a)(4)(B)(i)(I) also requires an extra element to apply here:  a semiautomatic firearm that can accept a large capacity magazine.  It therefore addresses a different harm:  the risk of a prohibited person obtaining a gun that can rapidly fire many bullets without needing to reload it.  In

8

the absence of a specific indication otherwise, *Asante* requires the two provisions to apply cumulatively.

*Second*, the structure of §2K2.1 confirms that the Sentencing Commission meant to cumulatively punish firearms trafficking.  The structure of the Guideline favors this interpretation because there is another guideline, USSG §2K2.1(a)(6), in addition to §2K2.1(a)(4), that also applies a higher base offense level for convictions under 18 U.S.C. §§ 922(d), 932, or 933.  It makes little sense then, for the Sentencing Commission to have also included USSG §2K2.1(b)(6)(A) and (B), which also increase punishment for selling firearms to a prohibited person and firearms trafficking, if the Commission did not mean for those enhancements to apply on top of the base offense levels that specifically cite those statutes.  Under the defendant's reading of the Guidelines, USSG §2K2.1(b)(6)(A) and (B) could never apply because they necessarily have heightened base offense levels by dint of the statute of conviction.  That cannot be the law.

*Third*, the history and purpose of §2K2.1 also supports the cumulative application of the enhancements.  These enhancements became effective with Amendment 819, which the Sentencing Commission adopted in response to Congress's direction to "ensure that persons convicted of an offense under section 932 or 933 of title 18, United States Code, and other offenses applicable to the straw purchases and trafficking of firearms are subject to increased penalties in comparison to those currently provided by the guidelines."  Amendment 819 (quoting Pub. L. 117-159, § 12004(a)(5), 136 Stat. 1313, 1328 (2022)), USSG Supp. App. C, vol. IV at

228 (Nov. 1, 2025).  To comply, the Sentencing Commission explained that it would "set the base offense level for defendants convicted of these crimes at level 14, or level 20 if the offense involved either a semiautomatic firearm that is capable of accepting a large capacity magazine or a firearm described in 26 U.S.C. § 5845(a)" and "create[] a new subsection, §2K2.1(b)(5)(B) [now §2K2.1(b)(6)(B)], which provides a 2-level enhancement for *any* defendant engaged in straw purchasing or trafficking."  *Id.* at 229-30 (emphasis added).  And, the Sentencing Commission specifically found that increased punishments were necessary because defendants (like this defendant) who were not themselves felons were then "under-punished."  *Id.* at 230.

For all these reasons, this Court should reject the defendant's objection to applying both USSG §2K2.1(b)(6)(B)(i)(I) and USSG §2K2.1(a)(4)(B)(i)(I).  It should thus adopt the Guideline ranges as calculated in the Report.

## IV.    A HIGH-END, GUIDELINES SENTENCE COMPORTS WITH THE STATUTORY PURPOSES OF SENTENCING

The United States respectfully submits that 46 months in prison, followed by three years of supervised release, is "sufficient, but not greater than necessary," to serve the purposes in 18 U.S.C. § 3553(a).  That sentence serves the purposes of (1) just punishment for a serious offense; (2) recognizing the defendant's culpability for committing a dangerous offense out of greed; (3) general deterrence; and (4) protecting the public from the defendant's future crimes.

*First*, the severity of the offense favors a significant prison sentence.  Under § 3553(a), courts analyze "the nature and circumstances of the offense" to ensure that the sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense."  *See* 18 U.S.C. §§ 3553(a)(1) & (a)(2)(A).  Here, the defendant profited from a scheme in which he sold guns to a person that he knew to be a convicted felon for "fast money."  He sold four guns, ammunition, and high-capacity magazine.  And the defendant encouraged the confidential informant to disobey the law, instructing him to wipe his fingerprints off bullets and reassuring him that the guns were untraceable.  Though the indictment charged only four sales, the Report suggests that the defendant had previously trafficked firearms:  the confidential informant reported an earlier purchase from the defendant, law enforcement recovered two guns that the defendant bought from crime scenes, and eight guns that the defendant bought remain unaccounted for.  So, a sentence within the Guidelines would reflect the seriousness of the defendant's offense, justly punish it, and promote respect for the law.

*Second*, the defendant's background does not mitigate his sentence.  Section 3553(a)(1) provides that courts shall consider a defendant's "history and characteristics" when imposing a sentence.  18 U.S.C. § 3553(a)(1).  This defendant has a limited criminal history:  one misdemeanor conviction from nearly thirty years ago.  Report ¶ 44.  But, as noted above, the defendant's misconduct did not begin with his controlled sales to the confidential informant:  He had previously sold guns

11

to the confidential informant, and his guns turned up at two crime scenes in 2022. Report ¶¶ 11-12.

The defendant's financial situation does not deserve sympathy either. At the time of the offense, he worked for licensed gun store and knew that felons could not buy firearms, but he committed this crime anyway. Report ¶¶ 11, 24. From 2022-2024, the defendant's household gross income exceeded $100,000. Report ¶ 76. The defendant owns his own home and two cars and has a positive monthly cash flow and net worth. Report ¶ 77. The Report shows no dire financial desperation; instead it shows that the defendant committed these crimes out of greed and a disregard for the harms of trafficking firearms. Given his financial condition and the defendant's reported purchases of cocaine from the confidential informant (Report ¶ 25), the United States concurs with the Report's recommendations that the defendant's supervised release include special conditions for financial disclosure and mental health and substance abuse treatment. Report ¶ 98.

*Third*, a high-end, Guidelines sentence will also deter others from taking part in firearms trafficking. A sentence should "afford adequate deterrence to criminal conduct." *Id.* § 3553(a)(2)(C). Put differently, "general deterrence is a critical factor that must be considered and should play a role in sentencing defendants." *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022). Investigators face serious challenges in detecting firearms trafficking because illegal guns may appear months or years after a non-prohibited-person firearms trafficker, like this defendant, bought the gun. Prospective traffickers, enticed by the possibility of easy money, may sell

12

guns to felons and other prohibited persons on the belief that they can evade detection and a severe sentence.  This Court should not countenance that scenario. A Guidelines sentence could cause potential traffickers to think again before selling a firearm to someone that they have reason to believe could not buy one from a licensed gun shop.

*Fourth*, a high-end, Guidelines sentence serves the purpose of specific deterrence.  In addition to fostering general deterrence, a court's sentence should "protect the public from further crimes of the defendant."  *Id.* § 3553(a)(2)(C).  A 46-month sentence would incapacitate this defendant from further gun purchases (legal or illegal) while in custody.  And, the defendant's status as a felon will prevent him from accessing this nation's lawful firearms market on his release from custody.  *See* 18 U.S.C. § 922(g)(1) (prohibiting felons from possessing firearms).  A high-end Guidelines sentence, coupled with a search condition during the defendant's supervised release, would thus protect the public.  *See* Report ¶ 98 (unobjected-to recommendation of a search condition during defendant's supervised release).

## V.    CONCLUSION

For all these reasons, the United States respectfully asks that the Court sentence the defendant to a high-end, Guidelines term of imprisonment of 46 months and three years of supervised release with the following special conditions:  financial

disclosure, mental health and substance abuse treatment, and submission to reasonable searches.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:   */s/ Adam W. McCall*
Adam W. McCall
Assistant United States Attorney
United States Attorney No. 226
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:       Adam.McCall@usdoj.gov

14

**U.S. v. Frank Jude Petrone, Sr.**                    **Case No. 8:25-cr-70-WFJ-CPT**

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Ryan Maguire, Esq.

/s/ *Adam W. McCall*
Adam W. McCall
Assistant United States Attorney
United States Attorney No. 226
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:    (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:        Adam.McCall@usdoj.gov